UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
Yelena Galper,                            :
                                          :
            Plaintiff,                    :         INDEX NO. 13-CV-3449 (RWS)
                                          :
     v.                                   :
                                          :         **AMENDED COMPLAINT**
JPMorgan Chase Bank, N.A.,                :
            Defendant.                    :
                                          :
                                          :
                                          :
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Plaintiff Yelena Galper, by her attorneys, Creizman PLLC, for her amended complaint, alleges as follows:

### INTRODUCTION

1.  From about 2008 through about 2011, at least three JPMorgan Chase Bank, N.A. ("Chase") employees participated in, and aided and abetted, a money laundering scheme, members of which have been prosecuted by the United States Attorney's Office for the Eastern District of New York and convicted on felony charges for their participation in that scheme. *See United States v. Gustave Drivas, et al.*, 10-CR-771 (NG) (EDNY) (the "*Drivas* Action"). In furtherance of that scheme, certain Chase employees assisted members of the money laundering scheme in using Plaintiff Yelena Galper's identity to open and operate a personal checking account in Galper's name, and business checking and savings accounts at Chase in the name of phony corporations on which Galper was falsely held out to be the principal officer and the sole account signatory. The personal and business accounts were operated and controlled without Ms. Galper's knowledge or authorization and were used to conceal the ownership and source of proceeds derived from a Medicare fraud scheme operated by owners and controllers of certain

medical clinics in Brooklyn, New York, called Bay Medical Care, SZS Medical Care PLLC, and SVS Wellcare Medical PLLC (the "Money Laundering Scheme").

2. The Chase employees who participated in, and aided and abetted, the Money Laundering Scheme included: (i) Ruslan Levy Ilishayev, who, during the period of the Money Laundering Scheme, served as a branch manager for a Chase branch located at 2512 Avenue U and Bedford Avenue, Chase Branch # 701 (the "Bedford Avenue Branch"), and a Chase branch located at Kings Highway and Coney Island Avenue, Chase Branch # 811 (the "Kings Highway Branch"); (ii) Marina Gezmer, who, during the period of the Money Laundering Scheme, served as a business account manager at the Bedford Avenue Branch; and (iii) Elizabeth Burgos, who, during the period of the Money Laundering Scheme, served as a teller at the Kings Highway Branch.

3. Ilishayev, Gezmer, Burgos, and other Chase employees facilitated the Money Laundering Scheme in the following ways: (i) in violation of Anti-Money Laundering ("AML") laws and regulations, as well as Chase internal policies and procedures designed to ensure Chase's compliance with AML laws and regulations, Ilishayev and Gezmer permitted bank accounts to be opened for shell corporations—corporations which performed no legitimate business function—without conducting any investigation or due diligence into the *bona fides* of those corporations; (ii) Ilishayev and Gezmer allowed a member of the Money Laundering Scheme open over 20 corporate bank accounts, including the corporate accounts listing Yelena Galper as President, without the listed account signatory appearing in person to sign the account opening documents in their presence; (iii) Ilishayev and Burgos facilitated the withdrawals of cashier's checks by Members of the Money Laundering Scheme from corporate accounts in Yelena Galper's name by falsely representing on bank records that Galper presented her driver's

license in connection with the transaction; (iv) Ilishayev doctored and manipulated the books and records of the bank to facilitate the above-referenced withdrawals, as well as illegal structuring transactions by Members of the Money Laundering Scheme; (v) Ilishayev and Gezmer, permitted Members of the Money Laundering Scheme to incur hundreds of thousands of dollars in debit card charges using the debit cards for personal and corporate accounts falsely listing Yelena Galper as signatory; and (vi) Ilishayev and Burgos permitted Members of the Money Laundering scheme to make numerous and substantial deposits, payments, and cash transfers into and out of accounts falsely listing Yelena Galper as signatory, as well as forging Yelena Galper's signature on checks.

4. In exchange for their unlawful conduct, Members of the Money Laundering Scheme provided Ilishayev, Gezmer, Burgos, and other Chase employees with money and other things of value. In addition, by assisting the Members of the Money Laundering Scheme, Ilishayev and Gezmer and other Chase employees improved their stature and compensation at Chase by increasing Chase's business customer base. Ilishayev and Gezmer and other Chase employees were employed by Chase long after Chase management discovered their participation in the Money Laundering Scheme. Chase did not undertake any disciplinary action against them, and actually provided them with legal representation in connection with the *Drivas* Action.

5. In participating in, aiding, abetting, and facilitating the Money Laundering Scheme, Ilishayev, Gezmer, Burgos, and other Chase employees acted within the scope of their employment and for the benefit and profit of Chase. Thus, Chase is liable for the theft of Galper's identity perpetrated by Ilishayev, Gezmer, Burgos, and other Chase employees who participated in the Money Laundering Scheme. The Chase employees' principal role in that scheme was to facilitate the unlawful use of Plaintiff Galper's identifying information without

3

her permission or knowledge in order to open, operate, and control corporate and personal bank accounts to further the objectives of the scheme.

6. In operating and controlling the corporate and personal accounts in Galper's name, the Members of the Money Laundering Scheme frequently caused checks to be bounced, and the fraudulent Galper accounts to be overdrawn.  Furthermore, based on Galper being the sole signatory on the corporate and personal accounts opened in her name and her forged signature appearing on checks, cashier's check withdrawals, and deposit slips, the government investigated Galper, and the fraudulent Chase accounts were closed.  Ultimately, although Galper told the FBI in an investigative interview that she had nothing to do with, and was unaware of the fraudulent Chase accounts in her name, Galper was indicted.

7. ChexSystems is a company based in Minnesota that collects data on account holders and provides reports to financial institutions to help those institutions identify risky customers.  ChexSystems' reports include the number of accounts closed due to abuse or fraud, when an account was closed, the amount owed and whether the balance has been paid.  It also includes any history of bounced checks.

8. Early Warning Systems is a limited liability company owned by Chase, BB&T, Bank of America, Capital One, and Wells Fargo, that provides similar services to financial institutions by facilitating a secure exchange of information among financial institutions across the country concerning customers and fraudulent activity.

9. The numerous bounced checks in the fraudulent Galper accounts, the closing of the fraudulent Galper accounts, and the government's investigation and Galper's indictment in the *Drivas* action all triggered reports to ChexSystems and Early Warning Systems falsely

associating her with fraud, money laundering, and other criminal activity in connection with the personal and corporate Galper Chase accounts.

10.     As a result of adverse reports that ChexSystems and Early Warning Systems provided to financial institutions about Galper, in February 2012, Chase closed Galper's 12-year-old son's bank account on which she was custodian.  Furthermore, Galper's longtime checking account at HSBC was canceled a few months later.  After her HSBC account was closed, she attempted to open an account at Capital One Bank in the Summer of 2012.  Not long after she opened it, Capital One closed the account.

11.     Plaintiff brings this action against Chase seeking compensatory and punitive damages in an amount exceeding 10 million dollars.

## PARTIES

12.     Defendant Chase is a national banking association organized and existing under the laws of the United States, with its main office, as designated in its Articles of Association, in Ohio, and thus Chase is a citizen of Ohio.

13.     Plaintiff is a resident of the State of New York.

## JURISDICTION AND VENUE

14.     Jurisdiction is conferred over this action pursuant to 28 U.S.C. § 1332 (a)(1) because the matter in controversy exceeds $75,000 and the Plaintiff and Defendant are citizens of different states.

15.      Venue is proper in this District because the Defendants have conducted and continue to conduct business in this District.

**STATEMENT OF FACTS**

16. Plaintiff was acquitted on April 8, 2013, in the *Drivas* Action after a seven-week criminal trial on the charge of conspiracy to commit money laundering in violation of Title 18 United States Code Section 1956(h). The Indictment alleged that Ms. Galper participated in the Money Laundering Scheme. The evidence against Galper included personal and corporate bank accounts opened and operated at Chase listing Galper as signatory. Through the operation and control of those accounts, the Members of the Money Laundering Scheme concealed the proceeds of Medicare fraud perpetrated by the owners and controllers of Bay Medical Care, SZS Medical Care, and SVS Wellcare Medical (the "Clinics").

17. Specifically, owners and controllers of the Clinics wrote checks to the phony corporations created by the Members of the Money Laundering Scheme, including those corporations whose Chase accounts listed Galper as signatory. The Members of the Money Laundering Scheme would withdraw cash or cashier's checks from the Chase accounts, which they would cash at cash checking facilities. After taking a fee, the Members of the Money Laundering Scheme would provide the cash to the owners and controllers of the Clinics.

18. In September 2009, accounts in the name of phony corporations were opened at Chase, falsely identifying Yelena Galper as signatory and "President": YG Best Advertising Inc., opened on September 15, 2009; MT Billing Inc., opened on September 15, 2009; and YB Medical Supply Inc., opened on September 16, 2009. These accounts were opened without Galper's permission or knowledge, and Galper did not sign her name on the account opening documents. In addition, Members of the Money Laundering Scheme, with the knowledge and approval of Marina Gezmer and other Chase employees, operated and controlled a previously dormant personal Chase account in Galper's name without Galper's permission or knowledge.

19. Without Galper's permission or knowledge, Members of the Money Laundering Scheme would use ATM debit cards for Yelena Galper, YB Medical Supply, YG Best Advertising, and MT Billing to make luxury purchases for their own personal benefit, including stays at luxurious hotels, international travel, fine dining, and designer clothing. These personal purchases made on debit cards in Yelena Galper's name and in the names of the corporate accounts associated with Galper ran into the hundreds of thousands of dollars. Chase employees, including Ilishayev and Gezmer, were aware of, and complicit in, the illicit use of debit cards by Members of the Money Laundering Scheme, by, among other things: (i) failing to report the unlawful use of the debit cards to Galper, Chase upper management, or law enforcement; (ii) failing to file Suspicious Activity Reports as required by the Bank Secrecy Act and by Chase internal policies and procedures; and (iii) proactively assisting the Members of the Money Laundering Scheme in concealing their illegal activity from law enforcement, Chase upper management, and Galper.

20. Gezmer testified at trial in the *Drivas* Action that Galper never signed the account opening documents for YB Medical Supply, YG Best Advertising, or MT Billing, or, indeed, any other documents in front of her. Further, Gezmer testified that she would permit a Member of the Money Laundering Scheme, whom she knew was not a signatory on those accounts, to open the accounts and and many others by taking signature cards outside the bank and returning with them signed, purportedly by the signatory. This was a violation of Chase policies and procedures.

21. A Member of the Money Laundering Scheme corroborated Gezmer's testimony at the *Drivas* trial and confirmed that Galper never signed any account opening documents for any accounts. The Member of the Scheme also testified that she and her co-conspirators provided

cash gifts to Gezmer on multiple occasions for their assistance in the Scheme, which included intentionally disregarding anti-money laundering compliance regulations and Chase internal policies and procedures. Further, according to a letter publicly filed by the government, funds from Chase accounts controlled by the Members of the Money Laundering Scheme were transferred to Burgos's personal bank account.

22. Members of the Money Laundering Scheme would withdraw funds and cashier's checks from Chase accounts, including from those companies listing Yelena Galper as signatory. This occurred while Ilishayev was Branch Manager of the Bedford Avenue Branch. Ilishayev and Gezmer saw to it that, in violation of Chase's policies and procedures, the Members of the Scheme could withdraw large amounts of cash and cashier's checks without presenting photo identification to the Branch tellers. For example, for a withdrawal of a large cash amount or a cashier's check in a large amount, the Members of the Scheme would go directly to Ilishayev and Gezmer to handle the transaction. Where the Members requested withdrawals directly from tellers, the tellers would seek and obtain approval from Ilishayev and Gezmer before permitting the cash or cashier's checks to be withdrawn without photo identification. Burgos, a teller at the Bedford Avenue Branch, was provided bribes or gratuities by the Members of the Money Laundering Scheme to facilitate those illicit withdrawals.

23. At some point during the course of the Money Laundering Scheme, Ilishayev was transferred to the Kings Highway Branch to serve as Branch Manager there. After Ilishayev left the Bedford Avenue Branch, the Branch Manager and Gezmer advised the Members of the Money Laundering Scheme that they could no longer withdraw cash or cashier's checks without presenting photo identification of the signatory to the corporate account from which the proposed withdrawals would be made. As a result, the Members of the Money Laundering Conspiracy

began making withdrawals from the Kings Highway Branch, where Ilishayev was Branch Manager.  There the Members of the Conspiracy would continue to withdraw cashier's checks and cash from accounts without presenting photo identification of the signatory because Ilishayev would sign off on the withdrawals himself or give tellers approval to allow the withdrawals without photo identification.

24. In order to conceal from Chase compliance officers, supervisory persons, and law enforcement that he was allowing withdrawals without photo identification, Ilishayev would write Galper's name and driver's license number on the withdrawal slip for most cashier's check withdrawals.  Galper's name and her driver's license number was provided to Ilishayev by Members of the Money Laundering Scheme.  The withdrawal slips were doctored in this way to falsely reflect that withdrawals from corporate accounts in Galper's name were made by Galper herself in person upon presentation of photo identification.  However, internal Chase reports reflect that for these withdrawal transactions, <u>only</u> an ATM card was presented and a pin number was entered.  <u>No</u> driver's license record was presented.   Thus, Galper was not there and did not present her driver's license.  Ilishayev simply manipulated the paperwork to hide the fact that Members of the Money Laundering Scheme were seeking to obtain the withdrawals from Galper-associated accounts without Galper being there, and to falsely suggest that Galper was there.

25. Members of the Money Laundering Scheme also frequently would withdraw cash at times and in amounts under $10,000 designed to avoid the requirement of Chase to file a Currency Transaction Report with the Financial Crimes Enforcement Network ("FinCEN").  This conduct was unlawful and constituted the federal crime of structuring.  Chase employees, including Ilishayev, Gezmer, and Burgos, were trained and well versed in detecting structuring

conduct. Where Chase employees suspected structuring, they were obligated to file Suspicious Activity Reports with FinCEN and to notify the Chase legal and compliance departments. Ilishayev, Gezmer, and Burgos, however, although well aware that the Members of the Money Laundering Scheme were engaging in illegal structuring, they actively concealed the structuring activity from FinCEN, Chase legal and compliance, and law enforcement, as well as the identities of the structurers, namely, the Members of the Money Laundering Scheme. Among the ways in which they accomplished this was by Ilishayev falsely handwriting Galper's name and driver's license number on cashier's check withdrawal slips to falsely reflect that she, and not Members of the Money Laundering Scheme, were engaging in these structuring transactions. Another way in which they accomplished this was by allowing Members of the Money Laundering Scheme to make cash withdrawals from Galper-associated accounts without Galper's permission or knowledge.

26. As set forth above, Ilishayev, Gezmer, Burgos, and other Chase employees participated in, and aided and abetted, the Money Laundering Scheme. In exchange for their participation, they were paid cash bribes or gratuities by Members of the Money Laundering Scheme. In addition, because bonuses were tied to businesses they brought into a branch, Ilishayev and Gezmer were rewarded by Chase for their performance. Ilishayev, Gezmer, and Burgos's conduct also benefitted Chase based on the increased business provided by the Members of the Money Laundering Scheme.

27. As a result of Chase's misconduct, Galper's name was listed on accounts through which proceeds of a crime, namely Medicare Fraud, were laundered. During the government's investigation, Galper was interviewed by the FBI and denied knowing about, or having anything to do with the accounts in her name that were fraudulently opened, operated, and controlled by

the Members of the Money Laundering Scheme.  However, the FBI apparently believed what it saw: Galper's name listed as principal officer and sole signatory on the corporate and personal accounts; checks purportedly signed (but forged) by Galper; cashier's check withdrawals purportedly made by Galper (but actually by Members of the Money Laundering Scheme, with the necessary willful assistance of Ilishayev and other Chase employees); deposits purportedly made (but forged) by Galper; and checks purportedly endorsed with Galper's (forged) signature.  Consequently, Galper was arrested, indicted, and tried on charges of Money Laundering Conspiracy in the *Drivas* Action.  Fortunately, she was acquitted.

28. As discussed above, Members of the Money Laundering Scheme opened, operated, and controlled the fraudulent personal and corporate Chase accounts in Galper's name and used her identity without her knowledge or permission.  Numerous bounced checks on the accounts caused by the Members of the Money Laundering Scheme, the closing of the fraudulent accounts, and the government's investigation and prosecution of Galper, each resulted in adverse information being reported to specialty consumer reporting agencies ChexSystems and Early Warning Systems, which, in turn, provided that information to financial institutions.  Those financial institutions caused legitimate accounts of Galper's to be closed and prevented her from opening new accounts.

**FIRST CAUSE OF ACTION**

**Identity Theft in Violation of N.Y. Gen. Bus. Law Section 308-s**

29. Plaintiff realleges each and every prior allegation herein.

30. Defendant Chase, knowingly and with the intent to defraud, obtained, possessed, transferred, and used bank accounts in Plaintiff's name without her consent, in violation of the identity theft statute, New York Gen. Bus. Law Section 308-s ("Section 308-s").

31. Defendant Chase's knowing and willful violation of Section 308-s resulted in the transmission and provision to one or more consumer reporting agencies, namely ChexSystems and Early Warning Systems, information that would otherwise not have been transmitted or provided, namely bounced checks, closed bank accounts due to suspected fraud and money laundering activity, purported fraud, money laundering, and other criminal or suspicious activity by Galper in connection with bank accounts, and a criminal investigation and prosecution of Galper for money laundering.

32. Plaintiff has suffered damages as a result, including financial and emotional damages.

## SECOND CAUSE OF ACTION

### Aiding and Abetting Identity Theft

33. Plaintiff realleges each and every prior allegation herein.

34. Defendant Chase, knowingly and with the intent to defraud, aided and abetted others in obtaining, possessing, and using Plaintiff's identifying information without her consent, in violation of Section 380-s.

35. Defendant Chase's aiding and abetting a knowing and willful violation of Section 308-s resulted in the transmission and provision to one or more consumer reporting agencies, namely ChexSystems and Early Warning Systems, information that would otherwise not have been transmitted or provided, namely bounced checks, closed bank accounts due to suspected fraud and money laundering activity, purported fraud, money laundering, and other criminal or suspicious activity by Galper in connection with bank accounts, and a criminal investigation and prosecution of Galper for money laundering.

36. Plaintiff has suffered damages as a result, including financial and emotional damages.

## THIRD CAUSE OF ACTION

### Conversion of Intangible Property

37.     Plaintiff realleges each and every prior allegation herein.

38.     Defendant committed an unauthorized intentional act by exercising dominion or control over Plaintiff's intangible personal property (her identifying information) and deprived Plaintiff of that property for an indefinite amount of time.

39.     Plaintiff has suffered damages as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief:

A. An order awarding Plaintiff compensatory damages in an amount to be determined at trial.

B. An order awarding Plaintiff punitive damages in an amount to be determined at trial to punish Chase for its wanton, reckless, and malicious acts described herein, and to protect society against similar acts.

C. An order awarding Plaintiff the costs of this suit, and costs associated with defending the *Drivas* action, including attorneys' fees.

D. An order awarding such other and further relief that this Court deems necessary and appropriate.


Dated: New York, New York
       July 5, 2013                           Respectfully submitted,
                                              **CREIZMAN PLLC**

                                              By: /s/ Eric M. Creizman
                                              Eric M. Creizman (EC-7684)
                                              Caroline J. Polisi (CP-5655)
                                              565 Fifth Avenue, 7th Floor
                                              New York, New York 10017
                                              Telephone: (212) 972-0200
                                              Facsimile: (646) 200-5022
                                              Email: ecreiz@creizmanllc.com
                                                     cpolisi@creizmanllc.com
                                              *Attorneys for Plaintiff Yelena Galper*