UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

YELENA GALPER,

                    Plaintiff,              13 Civ. 3449

      -against-                             OPINION

JPMORGAN CHASE, N.A.,

                    Defendant.

------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        CREIZMAN LLC
        565 Fifth Avenue, Fl. 7
        New York, NY 10017
        By:  Eric M. Creizman, Esq.


        Attorneys for Defendant

        LEVI LUBARSKY & FEIGENBAUM LLP
        1185 Avenue of the Americas, 17th Floor
        New York, NY 10036
        By:  Alan H. Scheiner, Esq.
             Andrea Likwornik Weiss, Esq.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/17/14

**Sweet, D.J.**

Defendant JPMorgan Chase Bank, N.A. ("Chase" or the "Defendant") has moved pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) to dismiss the Amended Complaint ("AC") of Yelena Galper ("Galper" or the "Plaintiff"), or, in the alternative, to strike certain allegations pursuant to Fed. R. Civ. P. 12(f). Based upon the conclusions set forth below, the motion to dismiss is granted, and the AC is dismissed with leave granted to replead within 20 days.

**Prior Proceedings**

Galper filed her complaint on May 22, 2013. Chase moved to dismiss the initial complaint on June 28, 2013. Galper filed her AC on July 9, 2013. The instant motion to dismiss the AC was heard and marked fully submitted on November 6, 2013.

Because this is a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the following facts, which this Court assumes to be true, are drawn from the AC. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed.

1

2d 179 (2007) ("[F]aced with a Rule 12(b)(6) motion to dismiss a
§ 10(b) action, courts must, as with any motion to dismiss for
failure to plead a claim on which relief can be granted, accept
all factual allegations in the complaint as true.").

        The AC alleges three causes of action: identity theft
in violation of N.Y. Gen. Bus. Law Section 380-s, aiding and
abetting identity theft and conversion. The AC contains
allegations concerning the activities of three Chase employees
from 2008-2011 in connection with a money laundering scheme,
members of which have been prosecuted and convicted on felony
charges in the Eastern District of New York. AC ¶¶ 1, 17. The
members of the money laundering scheme concealed the proceeds of
a Medicare fraud perpetrated by owners and controllers of three
health care clinics: Bay Medical Care, SZS Medical Care, and SVS
Wellcare Medical (the "Clinics"). Id. ¶ 16. Members of the money
laundering scheme provided a service to the owners and
controllers of the Clinics by creating phony corporations to
which the Clinic owners and controllers could write checks, thus
concealing the illicit proceeds of their fraud. Id. ¶ 17. The
money laundering conspirators would then withdraw cash or
cashier's checks from the bank accounts they opened for the
phony corporations and return the cash to the Clinic owners

2

after taking a fee for themselves. Id. In September 2009, three accounts in the name of phony corporations were opened at Chase that falsely identified Galper as signatory and president of the corporations. Id. ¶ 18. These accounts were opened by members of the money laundering scheme with the assistance of a Chase branch manager and business account manager, who allegedly opened the accounts without Galper's permission or knowledge. Id. The members of the money laundering scheme and the Chase employees also used a dormant personal checking account of Galper's to make personal, lavish expenditures for the members of the money laundering scheme. Id. ¶¶ 18, 19. The branch manager and a teller permitted a member of the money laundering scheme to make large cashier's check withdrawals using Galper's identity and forged bank records to falsely reflect that Galper made the withdrawals. Id. ¶ 22. The AC further details the conspiracy. Id. ¶¶ 19-26.

The money laundering conspirators provided the Chase employees with money and other things of value in exchange for their unlawful services. Id. ¶ 4. Additionally, by ostensibly bringing in business and bank fees through the opening and operation of the fraudulent business accounts, the Chase employees improved their stature and compensation at Chase. Id.

3

Oftentimes the money-laundering accounts opened in Galper's name would become overdrawn, or checks written to those accounts would bounce. Id. ¶ 6. When the money laundering conspiracy was discovered, the Government closed the fraudulent accounts. Id. Since Galper was the sole signatory on the accounts, the Government investigated her, and despite her denial of involvement, Galper was indicted. Id. The bounced checks, closed accounts, and government investigation triggered reports to ChexSystems and Early Warning Systems, companies which collect data on account holders and help institutions identify risky customers. Id. ¶¶ 7-9.

As a result of the adverse reports, Galper's checking account at HSBC was closed, as was the account she opened in response to the first account's closing. Id. ¶ 10. In February 2010, Chase also closed a bank account of Galper's 12-year old son, for which she was the custodian. Id. In addition, the unlawful activity captured the attention of law enforcement, who interviewed and investigated Galper, resulting in an ultimately unsuccessful federal criminal prosecution. Id. ¶ 27. After a seven week trial, a jury acquitted Galper of all charges. Id.

4

Galper seeks $10 million in compensatory and punitive damages from Chase. AC ¶ 11. She claims that her actual damages include financial and emotional damages, id. ¶ 32, including attorneys' fees and costs associated with defending the federal criminal prosecution against her, id. ¶ 14.

**The Applicable Standards**

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims . . . .'" Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Though the Court must accept the factual allegations of a complaint as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Iqbal, 129 S. Ct. at 1950 (quoting Twombly, 550 U.S. at 555).

Rule 9(b) requires that averments of fraud be "state[d] with particularity." Fed. R. Civ. P. 9(b); see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007). To satisfy this requirement, a plaintiff must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (internal quotation marks and citation omitted). General, conclusory, or speculative allegations, unsupported by specific facts, are legally insufficient. Id. at 176.

**The First, Second And Third Causes of Action Are Dismissed**

The first cause of action is based on state law that concerns the furnishing of information to credit reporting agencies. Such claims are preempted by the federal Fair Credit Reporting Act ("FCRA"). See 15 U.S.C. § 1681t(b)(1)(F) ("No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2."); 15 U.S.C. § 1681s-2(a)(1)(A) ("A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe the information is inaccurate."); Macpherson v. JPMorgan Chase Bank, N.A., 665 F.3d 45, 47-48 (2nd Cir. 2011) (statutory and common law claims grounded upon bank's false reporting to credit reporting agencies are preempted); see also Islam v. Option One Mortgage Corp., 432 F. Supp. 2d 181, 187-89, 194 (D. Mass. 2006) (holding that federal FCRA preempts claims under Massachusetts fair credit reporting statute and for common law negligence).

The AC alleges that false reports were made to two purported "consumer reporting agencies," ChexSystems and Early Warning Systems, AC ¶ 28, "falsely associating," id., Galper with, among other things: bounced checks on the Corporate Accounts; the closure of the Corporate Accounts; and unspecified

7

allegations of fraud and reports of the criminal prosecution, id. ¶¶ 7-10, 28, 31, 35, and, as a result of these reports, her son's bank account and two of her own personal bank accounts were closed, id. ¶¶ 10, 28.

Plaintiff's First and Second Causes of Action, for "Identity theft in Violation of" N.Y. Gen. Bus. Law § 380-s and for "aiding and abetting" the same, AC ¶¶ 30, 35, are governed by N.Y. Gen. Bus. Law § 380-l. Section 380-l only permits claims for violations of § 380-s that "resulted in the transmission or provision to a consumer reporting agency of information that would otherwise not have been transmitted or provided . . . ." N.Y. Gen. Bus. Law § 380-l (2013). The state statute requires the allegation of facts that trigger federal preemption: that identity theft resulted in misleading information being furnished to credit reporting agencies, thus causing adverse credit reports. Galper's Third Cause of Action, for "Conversion," relies on the same allegations as the identity theft and aiding and abetting claims, and is therefore also preempted. See AC at 14, ¶ 37 (Third Cause of Action "realleg[ing] each and every prior allegation herein").

8

Congress enacted "broad and explicit" preemption of the entire "subject matter" governed by specific sections of the federal statute, including § 1681s-2, which governs the furnishing of information to credit reporting agencies. See Dickman v. Verizon Commc'ns, Inc., 876 F. Supp. 2d 166, 174-75 (E.D.N.Y. 2012) (claim under New York's Gen. Bus. Law § 349 for unfair business practices preempted where it concerned furnishing incorrect information to credit agencies); Okocha v. HSBC Bank USA, N.A., 700 F. Supp. 2d 369, 375, 376 (S.D.N.Y. 2010) (same); Premium Mortg. Corp. v. Equifax Info. Servs., 583 F.3d 103, 105-06 (2d Cir. 2009) (holding that common law claims of misappropriation of trade secrets, unfair competition, and unjust enrichment concerning the "prescreening" of consumer credit information were properly dismissed because they were preempted under Sections 1681t(B)(1)(A) and 1681b).

Although generally preserving state law so long as it is not "inconsistent" with federal law, 15 U.S.C. § 1681t(a), the FCRA provides an exception to that preservation, i.e., it provides for express preemption, as follows:

(b) General exceptions
No requirement or prohibition may be imposed under the laws of any State—

9

(1) with respect to any subject matter regulated
under—

. . . .

      (F) section 1681s-2 of this title, relating
      to the responsibilities of persons who
      furnish information to consumer reporting
      agencies . . . .

15 U.S.C. § 1681t(b)(1)(F). Section 1681s-2 sets forth a

carefully crafted system of obligations and prohibitions to

regulate the furnishing of information about consumers to credit

reporting agencies. Among other things, the statute prohibits

the knowing furnishing of false information to credit reporting

agencies and requires certain corrective measures once notice of

a consumer dispute is received from a credit reporting agency.

15 U.S.C. § 1681s-2(a)(1) & (b)(1); see Markovskaya v. American

Home Mortg. Servicing, 867 F. Supp. 2d 340, 343-44 (E.D.N.Y.

2012) (describing separate provisions governing conduct before

and after receiving notice of a dispute from a credit reporting

agency).

      Congress committed most of § 1681s-2 exclusively to

administrative enforcement, but created a narrowly tailored

private cause of action for some violations. See 15 U.S.C.

§ 1681n (creating private right of action); 15 U.S.C. § 1681s-

10

2(c) (excluding claims for violation of 1681s-2(a) from the ambit of § 1681n); 15 U.S.C. §§ 1681s, 1681s-2(d) (providing for administrative enforcement of various provisions by specific federal and state agencies). Specifically, the FCRA authorizes a federal cause of action for "willful or negligent" failure to correct a credit reporting error after "notice of a credit dispute from a credit reporting agency" under § 1681s-2(b), but permits only regulatory enforcement of the more general duties set forth in § 1681s-2(a). Markovskaya, 867 F. Supp. 2d at 343-44; see also Donovan, 574 F. Supp. 2d. at 205 (no private right of action for furnishing false credit information in violation of § 1681s-2(a)); Islam, 432 F. Supp. 2d at 191 (no private right of action against a "furnisher of information . . . until the consumer notifies a credit reporting agency of an inaccuracy . . . and the agency then informs the furnisher").

By limiting the available remedies, Congress sought to protect its carefully balanced regulatory scheme against the impact of litigation that was not specifically authorized. "'The extra federal remedy in § 1681s-2 was accompanied by extra preemption in § 1681t(b)(1)(F), in order to implement the new plan under which reporting to credit agencies would be supervised by state and federal administrative agencies rather

11

than judges.'" Macpherson, 665 F.3d at 48 (quoting Purcell v.

Bank of America, 659 F.3d 622, 625 (7th Cir. 2011)); see also

Islam, 432 F. Supp. 2d at 187 (noting the "expressed intent of

Congress to have the conduct of furnishers of information

regulated exclusively by governmental agencies" (quoting Quigley

v. Pennsylvania Higher Educ. Assistance Agency, No. C00-1661CRB,

2000 WL 1721069, at *3 (N.D. Cal. Nov. 8, 2000)) (emphasis

removed)); Abbett v. Bank of America, No. 3:04CV 01102 WKW VPM,

2006 WL 581193, at *5 (M.D. Ala. March 8, 2006) (holding all

state law claims "based on the dissemination of false credit

information" to be preempted).


        Plaintiff states in her Opposition all of the elements

required for preemption: (1) the federal FCRA, specifically 15

U.S.C. §§ 1681t(b)(1)(F) & 1681s-2(a)(1)(A), preempts state law

claims concerning the furnishing of incorrect credit information

to credit reporting agencies; (2) her claim is brought under

N.Y. Gen. Bus. Law § 380-l (for violations of Gen. Bus. Law

§ 380-s); (3) Section 380-l requires "the transmission or

provision to a consumer reporting agency of information" as a

result of an identity theft; and (4) she has alleged that

incorrect information was furnished to credit agencies as a

result of the identity theft. See Opp. Br. at 5-6; see also Mov.

Br. at 8-10. However, she maintains that her claim is not
preempted because it is "not related" to the subject matter of
§1681s-2, Opp. Br. at 5, i.e., the furnishing of information to
credit reporting agencies.

However, the furnishing of false information to credit
reporting agencies is an element of her claim under Gen. Bus.
Law § 380-l. Plaintiff mischaracterizes the requirement in
§ 380-l that "false credit reporting" have arisen from an
identity theft as a "jurisdictional criteria." Opp. Br. at 6.
The state law does not contain any "jurisdictional" criteria.
Instead, the furnishing of incorrect credit information to cause
an incorrect credit report is an inescapable element of the
claim, falling squarely within the ambit of 15 U.S.C. § 1681s-2.
See 15 U.S.C. § 1681t(b)(1)(F). Although the claims also contain
other elements (i.e., Gen. Bus. Law § 380-s) not directly
governed by 15 U.S.C. § 1681s-2, presumption is still
appropriate given the significant overlap of 15 U.S.C. § 1681s-
2.

The statutory language preempting state law "with
respect to" the "subject matter" of furnishing credit
information is "broad and explicit." Premium Mortg. Corp. v.

13

Equifax Info. Servs., LLC, No. 07-CV-6349T, 2008 WL 4507613, at
*3 (W.D.N.Y. Sept. 30, 2008) (quoting Consumer Data Indus. Ass'n
v. Swanson, No. 07-CV-3376 (PJS/JJG), 2007 WL 2219389, at *4 (D.
Minn. July 30, 2007)), aff'd, 583 F.3d 103, 105-06 (2d Cir.
2009). Preemption here is not narrowly limited to laws focused
solely on the "intentional furnishing of false credit reports."
Opp. Br. at 6. Any furnishing of information to credit agencies,
including conduct that is not prohibited by the federal law,
falls within its "subject matter." Consumer Data, 2007 WL
2219389, at *4.

    When determining the scope of similar statutory
preemption provisions, the Supreme Court, applying the phrase
"relating to" – the equivalent of "with respect to" here - holds
that "relating to" indicates a "broad scope" and "expansive
sweep," preempting state laws " in connection with," or "with
reference to" the preempted subject matter. Cal. Div. of Labor
Standards Enforcement v. Dillingham Constr., N.A., Inc., 519
U.S. 316, 324-25 (1997). If the law contains a "reference" to
the preempted subject matter, "or makes the existence of
preempted subject matter essential to the law's operation, then
that state law is preempted by the federal law." Metropolitan
Taxicab Board of Trade v. City of New York, 615 F.3d 152, 156

14

(2d Cir. 2010) (citing Cal. Div. of Labor Standards, 519 U.S. at 325) (holding taxicab hybrid fuel regulations preempted by federal Energy Policy and Conservation Act). N.Y. Gen. Bus. Law § 380-l has a "reference to" the subject matter of § 1681s-2, which is "essential to the law's operation," because § 380-l requires the furnishing of information to credit agencies. Id.

Moreover, § 1681s-2 specifically addresses identity theft as it affects credit reporting, which is the very same subject as § 380-l. See 15 U.S.C. § 1681s-2(a)(6) (requiring reasonable procedures to correct information affected by identity theft and prohibiting furnishing certain information after report of identity theft). Therefore Plaintiff's first and second causes of action are entirely preempted. Galper incorrectly relies on two authorities for the proposition that her claim is not preempted. In Scott v. Real Estate Fin. Grp. the Second Circuit did not consider preemption at all, and the claim in that case did not concern furnishing information under 15 U.S.C. § 1681s-2, but rather obtaining a credit report under false pretenses and failing to make certain notices to consumers. 183 F.3d 97, 99-100 (2nd Cir. 1999) (citing 15 U.S.C. §§ 1681q, 1681b(3)(E)). Moreover, in 1995 – the time of the events at issue in Scott – the express preemption provisions of

15

15 U.S.C. § 1681t(b) had not been enacted, and the FCRA

contained only a savings clause preserving consistent state law.

See id. at 100 n.1 (citing pre-1996 amendments version of FCRA);

15 U.S.C. § 1681t (as in effect prior to September 30, 1996)

(enacted in Act of Oct. 26, 1970 Pub. L. 91-508, Title VI,

§ 601, 84 Stat. 1136)). Biosafe-One, Inc. v. Hawks, also cited

by Plaintiff, is also concerned with obtaining a credit report

under false pretenses, and the Court dismissed the claim under

both state and federal law, mooting any preemption question,

which was not raised or considered. 639 F. Supp. 2d 358, 368

(S.D.N.Y. 2009).


**The Third Cause Of Action Is Inadequately Pled**


Plaintiff's Third Cause of Action for "Conversion of

Intangible Property" fails to allege that she was deprived of

the use of her "identifying information," which is the property

that she alleges was converted. AC ¶ 38.


The Plaintiff has alleged that Chase converted her

property by "commit[ing] an unauthorized intentional act by

exercising dominion or control over [p]laintiff's intangible

personal property (her identifying information) and deprived

16

[her] of that property for an indefinite amount of time." AC
¶ 38. However, even for intangible property, the tort of
conversion requires that the Plaintiff be deprived of her use of
the property; "a defendant who does not 'exclude the owner from
the exercise of [her] rights[] is not liable for conversion'"
Leser v. Karenkooper.com, 18 Misc. 3d 1119(A), 856 N.Y.S.2d 498,
2008 WL 192099, at *5 (Sup. Ct. N.Y. County Jan. 14, 2008)
(quoting State of New York v. Seventh Regiment Fund, Inc., 774
N.E.2d 702, 710, 98 N.Y.2d 249, 259-60, 746 N.Y.S.2d 637, 645
(N.Y. 2002)). No facts are alleged to support a plausible
inference that she was actually denied the use of her own
"identifying information" and the conclusory recitation of the
element of deprivation is inadequate under Fed. R. Civ. P. 8.
See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements
of a cause of action, supported by mere conclusory statements,
do not suffice.").

       The tort of conversion is traditionally defined as
'"the unauthorized assumption and exercise of the right of
ownership over goods belonging to another to the exclusion of
the owner's rights.'" Leser, 2008 WL 192099, at *5 (quoting
Seventh Regiment Fund, 774 N.E.2d at 710, 98 N.Y.2d at 259, 746
N.Y.S.2d at 645). Here Plaintiff has alleged that she was

17

deprived of "intangible property" in the form of her

"identifying information," and the only identifying information

mentioned in the Complaint is Plaintiff's name and driver's

license number. AC ¶ 24. In Thyroff v. Nationwide Mut. Ins. Co.,

the New York Court of Appeals recognized that intangible

property could be subject to a conversion claim, but only where,

as in the case of tangible property, the plaintiff is entirely

deprived of the use of the property. 864 N.E.2d 1272, 1273,

1276-78, 8 N.Y.3d 283, 292-93, 832 N.Y.S.2d 873, 879 (N.Y. 2007)

(holding that computer files could be the subject of a

conversion claim, where plaintiff was entirely denied use of

those files).

        The court in Leser dismissed a conversion claim very

similar to Galper's. 2008 WL 192099. The plaintiff in Leser,

like Galper here, unsuccessfully alleged identity theft by the

defendants' unauthorized use of her name, as well as trademarks,

photos and other personal information, and she also brought a

claim for conversion for the unauthorized use of images from her

website and her trade name. Id. at *1, *3, *5. The court

dismissed the conversion claim, holding that the tort of

conversion cannot lie where the plaintiff was not denied the use

of her purportedly converted property - in Leser the trade name

18

and photos; in this case Galper's "identifying information." <u>Id.</u>
at *5.

In her opposition brief, Plaintiff concedes that,
notwithstanding the alleged misuse of her identity, she "still
retained her name and identifying information." Opp. Br. at 9.
Although Galper has alleged that her personal bank accounts were
closed as an indirect result of the conspirators' use of her
identifying information, AC ¶¶ 10, 28, that does not satisfy the
missing element of deprivation. Galper was allegedly deprived of
the use of certain bank accounts, not of her identifying
information. Plaintiff's "identifying information" is akin to
the computer files in <u>A & G Research, Inc. v. GC Metrics, Inc.</u>,
where the court held that because the data was only copied from
the plaintiff's computers – and the plaintiff still could use
the data – there could be no conversion claim for the allegedly
unauthorized copying of that data. No. 05870/2007, 19 Misc. 3d
1136(A), 862 N.Y.S.2d 806, 2008 WL 2150110, at *26-*27 (Sup. Ct.
Westchester County May 21, 2008); <u>see also</u> <u>Trustforte Corp. v.</u>
<u>Eisen</u>, No. 600521/2005, 10 Misc. 3d 1064(A), 814 N.Y.S.2d 565,
2005 WL 3501587, at *2 (Sup. Ct. N.Y. County Nov. 15, 2005)
(dismissing claim for conversion of customer lists and other

19

business records because defendant only copied the information
and did not deprive plaintiff of the use of it).

      Plaintiff relies on cases construing federal criminal
statutes to support her broad and incorrect pronouncement that
"in the Second Circuit . . . Conversion includes the 'misuse and
abuse' of property or its use 'in an unauthorized manner.'" Opp.
Br. at 8-9. But the federal statutory cases Galper cites have
nothing to do with common law conversion. See United States v.
Girard, 601 F.2d 69 (2d Cir. 1979) (construing 18 U.S.C. § 641,
which prohibits theft of government property); United States v.
Sam Goody, Inc., 506 F. Supp. 380, 390 (E.D.N.Y. 1981)
(construing 18 U.S.C. § 2314, which prohibits interstate
transportation of stolen property).

      The Second Circuit specifically recognized that:

> According to New York law, "[c]onversion is the
> unauthorized assumption and exercise of the right
> of ownership over goods belonging to another to
> the exclusion of the owner's rights." . . . This
> includes a "denial or violation of the
> plaintiff's dominion, rights, or possession" over
> her property. It also requires that the defendant
> exclude the owner from exercising her rights over
> the goods.

20

Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 403-04 (2d Cir. 2006) (alteration in original) (internal quotation marks and citations omitted); see also, Pac. M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 396 (S.D.N.Y. 2012) (same) (collecting cases); Strategic Growth Int'l, Inc. v. RemoteMDx, Inc., 06 CIV 3915, 2008 WL 4179235, at *3 (S.D.N.Y. Sept. 10, 2008); Briarpatch Ltd., L.P. v. Pate, 81 F. Supp. 2d 509, 516-17 (S.D.N.Y. 2000).


        Here, the AC does not allege that Plaintiff was deprived of the use of her identity. Accordingly, the conversion claim will be dismissed.


**Defendant's Contentions Regarding Inadequacy of Allegations
And Plaintiff's Alleged Damages Are Not Recoverable
Under N.Y. Gen. Bus. Law § 380-s Are Moot**


        Defendant contends that Plaintiff failed to plead fraud with particularity under Rule 9(b) and the alleged damages she seeks are not recoverable for her claims under N.Y. Gen. Bus. Law § 380-s. Plaintiff's First, Second and Third Causes of Action are preempted by federal law, and Plaintiff's Third Cause of Action Is Inadequately Pled; as such, Defendant's contentions are moot.

21

## Conclusion

Given the reasoning above, Defendant's motion to dismiss is granted, and motion to strike is denied as moot. The AC is dismissed with leave granted to replead within 20 days.

It is so ordered.

New York, NY
March 14, 2013

ROBERT W. SWEET